UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

NORMAN GOLTEN, individually and
derivatively on behalf of GOLTENS
WORLDWIDE MANAGEMENT CORP. and
GOLTENS-NEW YORK CORP.,

                            Plaintiff,

      - against -

CAROL KASPER, HENRY KASPER, VIVIAN
BAYLEY, RICHARD BAYLEY, SYLVIA
STRAND, EIVIND STRAND, MARK
RUTKOWSKI, PAUL FRIEDBERG, KASPER
FAMILY HOLDINGS LLC, BAYLEY FAMILY
HOLDINGS LLC, STRAND FAMILY
HOLDINGS LLC, GOLTENS WORLDWIDE
MANAGEMENT CORP. and GOLTENS-
NEW YORK CORP.,

                          Defendants.

------------------------------------------------------------x

07 Civ. 01024 (GBD) (HBP)

**ECF Case**

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO RESCIND AND STAY ORDER OF MAGISTRATE JUDGE

---

**STORCH AMINI & MUNVES PC**
**Two Grand Central Tower, 25th Floor**
**140 East 45th Street**
**New York, NY  10017**
**Tel: (212) 490-4100**
**Fax: (212) 490-4208**
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... i

STATEMENT OF FACTS ..................................................................................3

    A.    The Amended Complaint's Allegations Relevant to this Motion...........................3

    B.    Proceedings Before Magistrate Judge Pitman ...........................................6

ARGUMENT ....................................................................................................9

    POINT I.    DEFENDANTS ATTEMPT TO REHASH THE ARGUMENTS BEFORE MAGISTRATE JUDGE PITMAN SHOULD BE SUMMARILY DENIED................................................................................10

    POINT II.    GOLTEN IS ENTITLED TO DISCOVERY REGARDING DEFENDANT BAD FAITH ..........................................................................12

        A.    The Business Judgment Rule Permits Discovery Into Defendants' Bath Faith.......................................................................12

        B.    Bad Faith Does Not Have to be Pleaded With Particularity.............16

        C.    Golten is Entitled to Question the Board Members Regarding Their Decision and Whether They Blindly Relied on the May 18, 2007 Report..........................................................................21

        D.    Golten Has Sufficiently Pleaded Bad Faith ......................................23

    POINT III.    DEFENDANTS ARE LIMITED TO THE MAY 18TH REPORT AND CANNOT SEEK DISCOVERY TO ALLEGEDLY SUPPORT THE REPORT ........................................................................24

CONCLUSION.................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                          <u>Page</u>

<u>Auer v. Dressel</u>,
    306 N.Y. 427 (1954) ........................................................................16, 24

<u>Auerbach v. Bennett</u>,
    47 N.Y.2d 619, 634........................................................................22

<u>Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C.</u>,
    499 F.Supp.2d 475 (S.D.N.Y.2007)........................................................10

<u>Boyle v. Petrie Stores Corp.</u>,
    136 Misc.2d 380 (N.Y. County 1985) ....................................................13

<u>Breezy Point Co-op., Inc. v. Young</u>,
    123 A.D.2d 354 (2nd Dept. 1986) ..............................................12, 13, 16

<u>Clark v. Eastern Tennis Umpires Ass'n</u>,
    118 A.D.2d 853 ........................................................................19, 20

<u>Davidson v. James</u>,
    172 A.D.2d 323 (1st Dep't 1991) ........................................................20

<u>Fells v. Katz</u>,
    256 N.Y. 67 (1931) ....................................................................12, 16

<u>Grace v. Grace Institute</u>,
    19 N.Y.2d 307 (1967) ..................................................................19, 20

<u>Hanson Trust PLC v. ML SCM Acquisition</u>,
    781 F.2d 264 (2d Cir. 1986)......................................................13, 21, 22, 23

<u>Hickman v. Taylor</u>,
    329 U.S. 495 (1947)......................................................................21

<u>Jones v. Surrey</u>,
    263 A.D.2d 207 (1st Dep't. 1999) ............................................11, 18, 19

<u>Nikkal Indus., Ltd. v. Salton, Inc.</u>,
    689 F.Supp. 187 (S.D.N.Y.1988)........................................................10

<u>Parnes v. Bally Entertainment Corp.</u>,
    722 A.2d 1246 (Del. Supr. 1999)........................................................12

i

Pilat v. Broach Systems, Inc.
    108 N.J. Super 88 (App. Div. 1969) .......................................................................12

Rohe v. Reliance Training Network, Inc.,
    2000 WL 1038190 (Del. Ch. 2000) .....................................................................14

Silva v. Peninsula Hotel,
    509 F.Supp.2d 364 (S.D.N.Y. 2007).....................................................................11

Stern v. General Electric,
    924, F.2d 472 (2d. Cir. 1991 ...........................................................2, 8, 17, 19, 23

Weiser v. Grace,
    197 Misc, 116 (N.Y. 1998) .................................................................................11

## PRELIMINARY STATEMENT

Even the defendants do not dispute that to enjoy the deference afforded a board of directors under the business judgment rule, the director defendants had to remove plaintiff, Norman Golten ("Golten") from the board in good faith. <u>See</u> Ex. B[1] at 11.  Nonetheless, without identifying what "statutes, case law or rule of procedure" Magistrate Judge Pitman purportedly "failed to apply," Def. Mem. at 6, defendants argue that Golten cannot seek discovery on the issue of bad faith for two reasons.  First, they argue that Golten failed to allege the director defendants'[2] bad faith with sufficient particularity, and this supposed defect in the pleading means he should be precluded from conducting discovery into their bad faith. Second, they say that because they purportedly gave Golten notice and an opportunity to be heard on the charges against him, he is not entitled to discovery into whether their decision to remove him from the board was made in good faith.  In other words, defendants contend that providing a director notice of charges and a chance to address them prior to the vote to remove absolves the board from the requirement that the decision be made in good faith.  Defendants are wrong on both counts.

In fact, the "leading treatise" defendants quoted to Magistrate Judge Pitman, and again to this Court, provides that in precisely these circumstances – even assuming a director is afforded notice and an opportunity to be heard[3] – courts will inquire into whether the board acted "within its powers . . . <u>and</u> whether they have exercised their powers fairly <u>and in good faith</u>."  Def.

---

[1] Unless otherwise indicated references to exhibits are to those exhibits annexed to the Declaration of Lita Beth Wright, dated November 28, 2007.

[2] As used herein, "director defendants" shall mean defendants Mark Rutkowski, Sylvia Strand, Eivand Strand, Carol Kasper, Henry Kasper, Vivian Bayley and Richard Bayley collectively.

[3] As explained below, Golten does not concede that he was given notice and an opportunity to be heard on all issues the director defendants now claim served as the basis for their decision to remove him from the board.  <u>See</u> <u>infra</u> at 15.

Mem. at 8, citing FLETCHERS-CYC § 360.  According to the very treatise defendants cite, the deference afforded directors is hardly absolute, even where the procedures employed for removal are not an issue.  Thus, this motion hardly "raises a critical question of first impression with respect to the application of the business judgment rule to votes by members of a board of directors to remove a director for cause[,]" as defendants suggest.  Def. Mem. at 1.

Magistrate Judge Pitman, after extensive argument, addressed at length whether the alleged insufficiency of Golten's allegations of bad faith could serve as a cognizable basis for limiting discovery, and rejected defendants' position, premised strictly on New York State cases on pleading bad faith, as contrary to the law of this Circuit[4].  Specifically, he noted that the Second Circuit in <u>Stern v. General Electric</u>, 924, F.2d 472 (2d. Cir. 1991) has explicitly held that bad faith does not have to be pleaded with particularity to survive a motion dismiss (a motion defendants did not make).  That ruling applies with equal force to a plaintiff's right to seek discovery on the issue of bad faith.  In response to Magistrate Judge Pitman's inquiry, defendants were unable to cite any controlling legal authority for the notion that Golten had to plead bad faith with particularity to take discovery on that issue.  Magistrate Judge Pitman correctly concluded that Golten is entitled to discovery regarding bad faith, and, further, Golten does not have to plead bad faith beyond the requirements of Rule 8 notice pleading to get it.

On appeal, defendants sound a familiar refrain, arguing again that <u>Stern</u> is not applicable because Golten was allegedly provided notice and an opportunity to be heard before he was removed from the board.  Defendants still fail to cite to a single case to support their claim that notice and an opportunity relieves a board of their obligation to act in good faith.  Furthermore,

---

[4] Defendants are simply wrong that Golten has merely used the words "bad faith" without putting forth any specific allegations of bad faith. <u>See</u> <u>e.g.</u>, Def. Mem. at 8; Exhibit D at 19.

2

defendants' position, if adopted by this Court, would eviscerate the requirement that a board act in good faith which is embedded in the law.

Defendants also suggest that their reliance on a report prepared by their counsel in this case insulates them from discovery into whether they relied on it in good faith.  Def. Mem. at 10. To the contrary, the Second Circuit and the New York Court of Appeals have held that a board's blind reliance on the recommendations of professionals does not constitute a good faith exercise of its business judgment.  That is precisely what Golten has alleged, among other things, here. Indeed, both courts have held that a plaintiff is entitled to determine if the directors carefully reviewed the report and determine what evidence the board used or had access to, to support its business judgment.  Given that this is the specific discovery that  Golten is seeking, this claim too fails.

Finally, defendants request that if Golten is permitted discovery on the issue of the board's bad faith, they should be permitted in this litigation to "discover the truth" about whether there was cause to remove Golten.  They have cited no authority for this proposition, and for good reason.  Whether the board exercised its business judgment in good faith when it voted to remove Golten has to be judged on the information available to and considered by the board at the time.  As defendants admitted to Magistrate Judge Pitman, see Ex. C at 10, they cannot now use this litigation to conduct the investigation they should have in the first place.

## STATEMENT OF FACTS

### A. The Amended Complaint's Allegations Relevant to this Motion

Golten is the largest individual shareholder of all of the Goltens companies worldwide. Until May 31, 2007, was a member of the board of directors of Goltens Worldwide, a New Jersey corporation, and Goltens NY, a New York corporation, along with, among others, his

sisters and their spouses. After years of being unable to get the company to award dividends in proportion to his percentage of shares, Golten initiated the instant suit in March 2007. <u>See</u> Affirmation of Nicholas Arons ("Arons Aff."), Ex. 4 at ¶¶ 19-22.

 In retaliation for the instant suit, the defendants implemented a scheme to remove Golten from the board. On May 8, 2007, certain members of the Goltens Worldwide Board and certain Goltens NY shareholders held a meeting (the "May 8 Meeting"). At the May 8 Meeting, they voted to call a special meeting of the Goltens Worldwide Board and the shareholders of Goltens NY for May 30, 2007 to consider whether Golten should be removed from the companies' respective boards of directors (the "May 30 Meeting"). <u>See</u> Arons. Aff. Ex. 4 at ¶ 45. The participants of the May 8 Meeting also unanimously directed Orans Elsen (the same law firm retained by Goltens Worldwide and Goltens NY to defend this action) to prepare a memorandum setting forth the facts and legal issues to be decided in whether to remove Golten for cause. <u>Id.</u> at ¶ 46.

 On or about May 18, 2007, Orans Elsen distributed the memorandum regarding Goltens removal from the board (the "Report"). The Report alleges various grounds for Golten's removal and purports to attach "documentary evidence" supporting a finding that the board and shareholders had grounds for removing Golten for cause. The Report asserts that Golten held himself out as having the authority to sell the Goltens Companies and disregarded instructions not to engage in such discussions. None of the alleged documentary evidence provided by Orans Elsen supports these allegations. <u>See</u> Arons Aff. Ex. 5.

 On May 30, 2007 the Goltens Worldwide board met to consider Golten's removal from the board. At the May 30 Meeting, Orans Elsen announced that the Report:

> was intended by us to be <u>a thorough review of the documentary evidence</u>, and because we haven't received any response, our

4

> intent is part [*sic*] of today's presentation is simply to rely on that
> presentation.

<u>See</u> Arons. Aff. Ex. 6 at 14 (emphasis added). Thereafter, Golten's counsel reviewed the points

raised in the Report that Orans Elsen claimed was supported by "documentary evidence"

attached to it and demonstrated that it constituted no more than pure speculation and conjecture.

Golten's counsel further demonstrated, point by point, that the alleged "documentary evidence"

attached thereto did not support any of the conclusions Orans Elsen reached in the Report. <u>Id.</u>

at 15-51. In fact, Golten's counsel provided numerous reasons why the so-called documentary

evidence failed to provide adequate grounds for cause. <u>Id.</u> As a result, there was no basis for

removing Golten from the boards for cause (other than the shareholders/directors own self-

interest).

In response, despite the fact that the Goltens Worldwide Board and Goltens NY

shareholders had the burden to show cause, Orans Elsen advised the board members and

shareholders that:

> . . . a fair inference can be drawn that there must be a problem or
> Golten would have produced what is that would show that in fact, he
> *did not have any of the conversations that appear to have happened*
> from the correspondence that we have in fact produced to you.

<u>See</u> Exhibit 6 at 51-52 (emphasis added). Thus, despite the fact that the Report was severely

biased against Golten, Orans Elsen improperly tried to shift the burden to Golten to provide

affirmative evidence of conversations that never took place. <u>Id.</u> at 51-52.

Thereafter, as they intended from the outset, the Goltens Worldwide Board, after a brief

discussion and relying solely on the Report and the presentations by counsel, voted to remove

Golten for alleged cause. <u>Id.</u> at 57-61. The Goltens NY shareholders, also relying solely on the

Report and presentations, but without any discussion, voted to remove Golten from the Goltens

NY Board for alleged cause. <u>Id.</u> at 67.

On June 28, 2007  Goltens served an Amended Complaint challenging his removal from the board.  In support of his contention that the board removed him in bad faith, the Amended Complaint alleges, among other things, that:

- the shareholder/directors  were self-interested in their vote to remove Golten (Arons. Aff. Ex. 4 at ¶56);

- the Report was biased against Golten (<u>Id.</u> at ¶58)

- the board knew or should have known that the allegations in the report were false, (<u>Id.</u>);

- defendants possessed and ignored documents that contradicted the Report (<u>Id.</u> at ¶57) and

- Golten's removal from the board was preordained <u>Id.</u> at ¶59.

Accordingly, notwithstanding defendants' insistence that the sum total of Golten's allegations of the board's bad faith are the words "bad faith," <u>see</u> Def. Mem. at 13, the Amended Complaint's allegations proves otherwise.  .

## B.  Proceedings Before Magistrate Judge Pitman

During discovery, Golten served interrogatories and documents requests to support his claim that his removal from the board was without cause and in bad faith.  Golten also noticed the depositions of each of the board members.  Defendants, except for information withheld on the ground of privilege, produced information responsive to these requests and did not assert an objection on the grounds that Golten was prohibited from discovery into the area of bad faith.

Defendants sought in discovery documents concerning Golten's alleged alcoholism, his travel records and communications with individuals allegedly interested in buying the Goltens companies.  Golten objected to these requests asserting that the defendants could not seek discovery to support his removal from the board after the fact because the board was limited to

the alleged evidence presented to the board when they voted to remove Golten from the board. By letter dated October 3, 2007, the defendants sought to compel Golten to produce documents concerning Golten's travel and his alleged alcoholism.  See Ex. A.

On October 5, 2007, a hearing was held before Magistrate Judge Pitman.  Golten continued to object to the requests on the aforementioned grounds.  After discussion with the parties, the Court requested simultaneous supplemental briefing from the parties concerning the standard of review of the boards decision to remove Golten.  Specifically, by order dated October 9, 2007, Magistrate Judge Pitman requested briefs addressing "the standard of review to be applied to the board of directors' decision in issue and what evidence may properly be considered in assessing the board's decision, i.e., is the record limited to information chargeable to members of the board."  See Arons Aff., Ex. 1.

By letters dated October 19, 2007, the parties set forth the standard of review.  In their submissions to the Court, both parties agreed that the defendants could only support their decision to remove Golten from the board based upon the alleged evidence that was submitted and reviewed by the board at the time of removal.  See Exs. B at 10,  and C at 2.  Defendants implicitly agreed that they were not entitled to discovery regarding Golten's travel or Golten's alleged alcoholism.  See Ex. B.  Defendants, however, asserted, for the first time, that Golten was not entitled to discovery regarding the issue of bad faith because Golten purportedly had not sufficiently pleaded that defendants had acted in bad faith.

On October 26, 2007, a supplemental hearing was held before Magistrate Judge Pitman on this issue.  Based upon the submissions of the parties Magistrate Judge Pitman concluded, and confirmed with both parties, that the only remaining issue to be decided was whether Golten was

entitled to discovery regarding bad faith.  See Ex. D at 3-4.[5]  Indeed, the only issue defendants

raised that was  left for Magistrate Judge Pitman was whether Golten had sufficiently pleaded

bad faith.  Id. at 10-14. (The Court: " Mr. Brown, in your letter – lets just see if we can find some

common ground. . . .  In your October 19 letter, it seems to me that you're clearly arguing that

they're not entitled to discovery because of a failure to adequately plead bad faith . . . .")

Both parties were provided an extensive opportunity to be heard.  Magistrate Judge

Pitman carefully considered and rejected defendants' argument that bad faith had to be pleaded

with particularity.  Id.  Specifically, Magistrate Judge Pitman, relying on the Second Circuits

decision in Stern v. General Electric, concluded that bad faith does not have to be pleaded with

particularity.  Id. at pp. 7-8.  The parties were provided copies of the Stern decision and

defendants were provided an opportunity to address the decision.  Defendants argued, as they do

in the instant motion, that the Stern was not applicable in light of the business judgment rule and

the fact that Golten was provided notice and an opportunity to be heard before he was removed

from the board.  See Ex. D at pp. 10-20.  These claims were addressed and rejected by

Magistrate Judge Pitman.  Id. at pp. 32-34.

During argument, Magistrate Judge Pitman set forth the following hypothetical that

illustrates the absurdity of defendants' position in light of controlling law to the contrary:

> The Court:    Let's assume the board members knew
> everything in the memo was bogus.  I'm not
> suggesting it is, in fact, the case, but let's
> assume -- let's assume for a minute that the
> May 18th memo was false, was fabrication --
> - was a fabrication and the board members
> all knew it. . . .  If that were the case,

---

[5] Defendants provided scant excerpts from the hearing before Magistrate Judge Pitman in support of their motion.  See Aron Aff., Ex. 7.  To ensure the record before this Court is complete, and the Court can appreciate the full extent of Magistrate Judge Pitman's careful consideration of the arguments and legal authorities presented to him, the complete transcript is annexed to the accompanying Declaration of Lita Beth Wright as Exhibit D.

|              | wouldn't they -- wouldn't Golten have a good claim under the bad faith exception the bad faith exception to the business judgment rule? |
|--------------|------|
| Mr. Brown:   | No, Your honor . . . |
| The Court:   | No? |
| Mr. Brown:   | . . . Because if that were the case, it would have been their obligation during the three weeks from when they got this purportedly false, completely fictitious memo to go to the board and say it's false for the following reason. Then -- |
| The Court:   | Is there case law to that effect? |
| Mr. Brown:   | Yes, Your Honor.  The record – the record before this Court would be this memo as against all of this evidence presented by Golten to the board showing that the memo was a lie.  The board would have then made a decision based upon -- |

* * *

|              |      |
|--------------|------|
| The Court:   | But it's all -- my hypothetical, the board meeting is a charade.  The board cooks up a fabricated memo, they all know it's false . . . but they want to make a paper trail. |
| Mr. Brown:   | That's why  Golten is given the option to participate in the board meeting to create his own paper trail to demonstrate that, so that when the analysis the Court has to make of what the board did was done in good faith is not a complete record.  You can't ignore the process completely and not put in evidence, say I don't like the outcome and then reargue all the issues, and that's what the law -- |
| The Court:   | Is there case law to that effect? |
| Mr. Brown:   | Yes, Your Honor. It's – |

9

| | |
|---|---|
| The Court: | Yeah.  What case? |
| Mr. Brown: | It's cited in Section 1 of our memo that talks about deference given to board decisions and what – |
| The Court: | Okay.  Where is the -- where is the case law on this specific point? |
| Mr. Brown: | That if the procedures are followed, you can't reargue it all? |
| The Court: | No, that if the board knows it's acting on false information that the aggrieved party can't make a bad faith challenge unless he presents evidence at the board meeting. |
| Mr. Brown: | I don't think I can cite a case that says that, Your Honor. |
| The Court: | Okay.  Well that's the proposition you're suggesting. |

See Ex. D at 15-17.

After hearing extensive argument, by order dated October 29, 2007, Magistrate Judge

Pitman denied defendants motion to compel and further ordered that Golten was entitled to seek

discovery into the issue of bad faith.

## ARGUMENT

### POINT I

### DEFENDANTS ATTEMPT TO REHASH THE ARGUMENTS BEFORE MAGISTRATE JUDGE PITMAN SHOULD BE SUMMARILY DENIED

It is well settled that a magistrate judge's resolution of a non-dispositive matter should be

afforded substantial deference and may be overturned only if found to have been an abuse of

discretion.  See Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C., 499 F.Supp.2d

475, 476 (S.D.N.Y.,2007); Nikkal Indus., Ltd. v. Salton, Inc., 689 F.Supp. 187, 189

(S.D.N.Y.1988).  Further "where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review a report and recommendation for clear error."  Silva v. Peninsula Hotel, 509 F.Supp.2d 364, 365-66 (S.D.N.Y. 2007).  The instant motion is nothing more than an improper attempt to rehash arguments presented and rejected by Magistrate Judge Pitman.  The transcript of the October 26th hearing establishes that Magistrate Judge Pitman correctly applied the law, and his decision was well within his discretion.  As the motion does not raise a single argument not presented to Magistrate Judge Pitman, the court should adopt the well reasoned opinion of Magistrate Judge Pitman.  See Silva, 509 F.Supp 2d. at 365-66.

Not only do defendants attempt to rehash the arguments made before Magistrate Judge Pitman, but they abandon the legal authority that allegedly supported their claims.  When the parties were before Magistrate Judge Pitman, defendants relied upon three cases to support their claim that  Golten was not entitled to discovery into bad faith.  Specifically, defendants relied upon Weiser v. Grace, 197 Misc, 116, 120 (N.Y. 1998), Jones v. Surrey, 263 A.D.2d 207 (1st Dep't. 1999), and an unnamed district court decision recently decided by Judge Kram.  Each of these cases were reviewed by Magistrate Jude Pitman and found to be either factually, or procedurally different and unsupportive of the defendants' claims.  See Ex. D at 8, 12-14, 26-31.  In the instant motion, the defendants have abandoned these arguments and have not cited to these cases.  Thus, defendants concede that those cases did not support their claims.  However, in the instant motion, except for five cases which were cited regarding the standard of review for the instant motion, defendants have failed to cite to any new authority that was not before Magistrate Judge Pitman.  Given that defendants have abandoned the main cases that allegedly supported their position and have not cited to any new law, defendants cannot establish that the decision

11

below was wrong.  It is defendants' position and not Magistrate Judge Pitman's decision that is contrary to law.  Thus, the instant motion should be denied.

## POINT II

### GOLTEN IS ENTITLED TO DISCOVERY REGARDING DEFENDANT BAD FAITH

#### A.  The Business Judgment Rule Permits Discovery Into Defendants' Bad Faith

It is well settled that the actions of directors must be "taken in good faith and in the exercises of honest judgment in the lawful and legitimate furtherance of corporate purposes." Breezy Point Co-op., Inc. v. Young, 123 A.D.2d 354, 354 (2nd Dept. 1986). [6]  Removal of a director for cause must be supported by evidence. Fells v. Katz, 256 N.Y. 67, 71 (1931). Magistrate Judge Pitman correctly concluded that, as a matter of law, bad faith is an exception to the business judgment rule and a valid area for discovery.  See Ex. D. at 20-21, 32-34.

All of the cases and treatises cited by the defendants in the instant motion make clear that bad faith is an exception to the business judgment rule.  For example, Parnes v. Bally Entertainment Corp., 722 A.2d 1246 (Del. Supr. 1999), cited by the defendants in support of their claim that the business judgment rule precludes discovery, clearly holds that bad faith is an exception to the rule.  Parnes 722 A.2d a1246 ("The presumptive validity of a business judgment is rebutted in those rare cases where the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any other ground other than bad faith.")  Likewise, FLETCHER-CYC §360, the "leading treatise" also quoted by the defendants, states "[t]he motives for the acts of a board of directors, when lawful, are not properly the subject

---

[6] Goltens N.Y. is a New York corporation and Goltens Worldwide is a New Jersey corporation.  As such New York law and New Jersey law, which are identical on this point, governs the removal of a director from a board.  See Pilat v. Broach Systems, Inc. 108 N.J. Super 88, 92 (App. Div. 1969)

of judicial inquiry." The case law is explicitly clear that acting in bad faith is not lawful and, when proven, is an exception to the business judgment rule. See Breezy Point,123 A.D.2d at 354; Boyle v. Petrie Stores Corp., 136 Misc.2d 380, 386 (N.Y. County 1985) ("Notably, a discharge [from the board] for insubordination, rudeness, demoralization of employees, personality clashes or differences in personal style, outlook or policy does not … constitute a discharge for just cause."); see also See Hanson Trust PLC v. ML SCM Acquisition, 781 F.2d 264, 274 (2d Cir. 1986) (noting "that the business judgment rule should not be available to directors who do not 'exercise due care to ascertain the relevant facts before voting'") (quoting Arsht, The Business Judgment Rule Revisited, 8 Hofstra L.Rev. 93, 111 (1979)). As such, the business judgment rule does not preclude discovery into bad faith.

Indeed, the same "leading treatise" indicates that, even in the context of the removal of a director, courts will inquire "whether [the board] have acted within their powers, after giving notice to the accused and affording the accused an opportunity of making a defense, and whether they have exercised their powers fairly and in good faith." Def. Mem. at 7-8, quoting FLETCHER-CYC §360 (emphasis added). Defendants do not, and cannot, seriously argue that bad faith is not an exception to the business judgment rule. Indeed, the defendants conceded in their submission to Magistrate Judge Pitman that bad faith was a proper area for discovery. See Exhibit C. ("Under the standard discussed [in the letter] the Court's inquiry will be limited to (a) the procedure for removal, (b) bad faith, and (c) self-interest.") Rather, defendants appear to argue that Golten should not be permitted discovery into bad faith because he allegedly did not respond to the allegations of wrongdoing that were presented at the May 30, 2007 board of directors meeting. As set forth below, defendants have mischaracterized the record, and in any event, Golten, as a matter of law, is permitted discovery to establish bad faith.

13

As noted, defendants claim that Golten should not be entitled to discovery because he supposedly did not rebut the allegations of wrongdoing asserted against him.  See Def. Mem. at 6-7.  While defendants attached the entire transcript from the proceeding, they conveniently only quote from a few brief excerpts of the transcript, wherein Golten's counsel noted that litigation would likely ensue if they removed Golten from the board.  Contrary to defendants' claims, Golten's counsel spoke for almost an hour at the board of directors meeting and addressed the allegations made against Golten.  See Arons. Aff. Ex. 6.  Beginning on page 22 of the transcript of the May 30 meeting, Bijan Amini,  Golten's counsel, addressed each and every allegation contained in the report. Id. at 22.  For example, on page 27 of the transcript,  Mr. Amini specifically addressed the allegation that  Golten's lawsuits cannot serve as a basis for removal. Id. at 27.   Mr. Amini pointed out to the board members that the case law cited in the report is not correct and that the  Golten could not be removed for filing a meritorious lawsuit.  On page 28 of the transcript,  Mr. Amini addressed the claims that  Golten held himself out as having authority to sell the companies and pointed out to the board that none of the exhibits attached to the report support this claim.  Id. at 28.  On pages 29-31 of the transcript Mr. Amini pointed out to the board that the report, does not support the allegations that  Golten divulged confidential information, does not support the allegation that key employees were lost due to  Golten's action and does not support any claim that  Golten was responsible for low morale.  Id. at 29-31  Thus, any claim that Golten failed to avail himself of the opportunity to be heard is specious.

Defendants also allege in their papers that  Golten did not "explain the charge that he was an alcoholic."  Def. Mem. at 7.  Being an alcoholic is not grounds to remove a director.  Rather, defendants had the burden to establish that Golten's alleged alcoholism impaired his ability to be a member of the board.  See Rohe v. Reliance Training Network, Inc., 2000 WL 1038190, * 16

(Del. Ch. 2000) (director removed after being institutionalized for his alcoholism and instituting thirteen lawsuits against the company), cited at Def. Mem. at 4, 10. Here, there was nothing in the report for Golten to respond to.

Defendants conveniently leave out the fact that Report that ostensibly served as the basis to remove Golten from the board merely stated the directors "should also consider whether Golten has a drinking problem <u>that interferes with his ability to be a competent director</u>." <u>See</u> Exhibit 5 at 13 (emphasis added). The Report also states that it was based solely on the alleged documentary evidence attached to it and it "does not rely on attorney interviews with witnesses." <u>Id.</u> at 6. Yet there is not a single document attached to the report that even mentions Golten's alleged alcoholism. While there are numerous e-mails between the defendants about Golten, many of which were attached to the report, there is not a single communication attached to the report wherein the board members complain or indicate that Golten was ever drunk at a board meeting, or that his alleged alcoholism affected his ability to be a board member. Nor have defendants produced a single minute of any board meeting that reflected that Golten was impaired at a board meeting.[7]

Moreover, even if Golten had not appeared at the May 30 meeting, or had not addressed the allegations in the report, Golten would still be entitled to discovery into bad faith. The defendants appear to argue that the alleged failure of Golten to submit "evidence" at the hearing to rebut unsubstantiated charges somehow precludes him from arguing that the defendants acted in bad faith when they removed him from the board. Defendants have not cited to a single case

---

[7] This is particularly noteworthy given the fact that during the April 26, 2006 board meeting, the board discussed the fact that one of the managers of Goltens N.Y. was an alcoholic and had been arrested for his fourth DWI within 4 years. <u>See</u> Ex. E at 1. According to the minutes of the April 26, 2006 board meeting, the directors were concerned with the manager's ability to perform his job properly. This clearly indicates that when alcoholism is a problem it is addressed and documented by the board.

15

to support this proposition.   The defendants, not Golten, had the burden to establish that there was cause to remove him from the board.  See Fells, 256 N.Y. at 71 (holding that removal of a director for cause must be supported by evidence); Auer v. Dressel, 306 N.Y. 427, 432-33 (1954) (holding that director can only be removed based upon "proven charges.")  As noted above, it was Golten's position at the May 30 meeting that the Report was biased, foretold a preordained result and failed to document any evidence supporting Golten's removal for cause.  Golten was not required to prove a negative, rather the defendants had that burden to establish that the allegations actually occurred.

Defendants are essentially arguing that if a removed director does not appear or does not submit "evidence" then a board can act in bad faith.  This is illogical and if adopted would eviscerate the requirement that a board act in good faith.  See Breezy Point, 123 A.D.2d at 35.  Indeed, this very premise was considered and rejected by Magistrate Judge Pitman.  See supra at 9-10; Ex. D at 15-17.

Nor could the defendants cite to a case to support their claim before Magistrate Judge Pitman and indeed, the defendants, in the instant motion, continue to fail to provide any case law support this claim.  Thus, defendants' blatant mischaracterization of the record, that Golten did not present any evidence at the May 30, 2007 board meeting, is a red herring meant to detract the Court's attention away from the fact that bad faith is an exception to the business judgment rule and a valid area for discovery.  See Breezy Point, 123 A.D.2d at 35.

## B.  Bad Faith Does Not Have to be Pleaded With Particularity

Defendants next argue that Golten is not entitled to discovery into the director defendants' bad faith in the vote to remove him because he supposedly has not sufficiently pleaded bad faith.  This was, in fact,  the cornerstone of the defendants' argument before

16

Magistrate Judge Pitman, who carefully considered and properly rejected it.  See Ex. D at 10-14;

see also Ex. B.  As noted by Magistrate Judge Pitman, the Second Circuit in Stern v. General

Electric Company, 924 F.2d 472, 476 (2d Cir. 1991), made clear that "[i]n a federal complaint . .

. bad faith may be averred generally . . . ." (internal quotations and citations omitted.[8])  This rule

applies even when the claim is brought under state law.  Id. at 476, fn 6.  Thus, the Second

Circuit has explicitly rejected the heightened pleading standard that the defendants continue to

assert.

At the hearing on defendants' discovery motion, Magistrate Judge Pitman provided the

parties copies of the decision in Stern and asked defendants if they had any authority that

contradicted Stern.  See Ex. D at 8-9.   Defendants submitted an unreported and unpublished

recent decision of Judge Kram, of the Southern District of New York.  Id. at 8.  Magistrate Judge

Pitman correctly noted Judge Kram could not overrule the Second Circuit, and that, in any event,

Judge Kram's unpublished decision was factually and procedurally distinct from the

circumstances presented here. Id. at 8-9, 11-12, 17.

Later on in the hearing, defendants continued to assert that there was a heightened

pleading requirement in New York for bad faith.  Although Magistrate Judge Pitman correctly

noted that the Federal Rules of Civil Procedure governed pleading standards, even in a diversity

action, the Court permitted the defendants to identify any state law to support their claim.

However, as set forth in the following except from the proceedings below, defendants could not:

> The Court:    Well, where is the state law that there is a
> heightened pleading requirement in New

---

[8] Defendants state in their papers that Magistrate Judge Pitman based his decision to permit discovery into bad faith on Stern. [cite].  This is a misstatement of the record below.  Magistrate Judge Pitman concluded that bad faith is an exception to the business judgment rule and a valid area of inquiry.  It was defendants who argued that the plaintiff did not sufficient plead bad faith which was contradicted by the Second Circuit in Stern.

York to take discovery on the issue of bad
faith.

\* \* \*

Mr. Brown:   . . . The heightened pleading standard
requirement is discussed in <u>Wesier v. Grace</u>
which we cite on page 12 of our brief

\* \* \*

Mr. Brown:   Mr. Arons tells me that I was actually
referring to the wrong case.  It's a quote
from the <u>Jones</u> case which I do have.  <u>Jones
v. Surrey,</u> Your Honor, it's a First
Department case.

[Court reads portions of <u>Jones v. Surrey</u> 263 A.D.2d 207
(1st Dep't. 1999) into the record]

The Court:   [referring to <u>Jones v. Surrey</u>] Well, it sounds
like it's more of a 56(f) issue.  You know,
the counterpart in Federal practice is Rule
56(f).  It doesn't seem to be addressing the
issue of whether or not a discovery request
would be enforced or quashed were it served
in the absence of a summary judgment
motion.  I mean, it's a 56 – the state
counterpart of a 56(f) argument.  Am I
misreading this,  Mr. Brown?

Mr. Brown:   I don't believe you are, Your Honor.  I think
that case is procedurally different than this
case.

The Court:   Yeah.  All right.  Anything else you want to
tell me, Mr. Brown?

Mr. Brown:   If I could have one moment, Your Honor?

The Court:   Sure.

Mr. Brown:   No, Your Honor, there's not.

Even on appeal defendants have not cited to a single State or Federal case that supports

their claim that bad faith must be pleaded with particularity.  <u>See</u> Defendants' Memo at pp.8-9.

Indeed defendants, on appeal, have abandoned their reliance on Judge Kram's unpublished

18

decision or <u>Jones v. Surrey</u>.  Thus, they concede that Magistrate Judge Pitman correctly rejected their reliance on these cases.

On the instant motion, defendants attempt to distance themselves from <u>Stern</u> by asserting that <u>Stern</u> somehow does not apply because Golten was supposedly provided notice and an opportunity to be heard before he was removed from the board.[9]  In support, defendants cite to a string of cases that reiterate the procedural requirements to remove a director from the board. <u>See</u> Def. Mem. at 9.  These cases do not hold, as defendants suggest, that there is a heightened pleading standard in business judgment rule cases to warrant discovery into whether the directors acted in bad faith.

Defendants then quote extensively from two New York State cases, <u>Grace v. Grace Institute</u>, 19 N.Y.2d 307 (1967) and <u>Clark v. Eastern Tennis Umpires Ass'n</u>, 118 A.D.2d 853.  The facts of this case are inapposite to the facts in <u>Grace</u> and <u>Clark</u>.  Unlike <u>Grace</u> and <u>Clark,</u> in

---

[9] Defendants state that Golten has never claimed that he was denied notice and an opportunity to be heard. While Golten did not dispute this at the July 11, 2007 conference before this Court, Golten does not concede that he was provided any notice or opportunity with regards to the allegations that he was removed due to his alleged alcoholism.  As noted, as to the issue of alcoholism, the Report merely stated the directors "should also consider whether Golten has a drinking problem that interferes with his ability to be a competent director."  <u>See</u> Arons. Aff. Ex. 5 at 13.  At the time Golten filed the amended complaint, he was of the belief that this sentence was the sole basis for any alcoholism related allegations because there was no evidence in the Report that Golten was an alcoholic, much less whether such condition impacted his ability to serve as a director. However, after Golten moved for a preliminary injunction, defendants submitted an affidavit from defendant Mark Rutkowski purporting to recount an off the record discussion during the May 30th board meeting about Golten's alleged alcoholism. Rutkowski's claim is, at best, dubious given the fact that Leslie Lupert, counsel for the corporate and director defendants herein, indicated that the brief off the record discussion concerned only Golten's counsel's comments. <u>See</u> Arons. Aff. Ex. 6 at 57.  Golten's counsel did not address the issue of alcoholism because the report contained nothing to address.  <u>See</u> Arons. Aff. Ex. 5 at 13.

Defendants also make much of the fact that Golten and his counsel left the meeting before a final vote was taken.  While Golten and his counsel left the meeting before the final vote was taken, it was Golten's belief, based on representations from defendants' counsel, that the board intended to rely solely on the May 18th report and that the record, as far as alleged evidence was closed.  Further, at Golten's request, the board meeting was transcribed, such that Golten believed that all deliberations concerning his removal would be contained in the transcript. The defendants have offered no excuse for conducting any part of the proceedings off the record. Given that the Report is bereft of any evidence of Golten's alleged alcoholism, or that any alleged alcoholism had any impact on his capacity as a director, and the transcript of the hearing does not contain any statements by the defendants regarding Golten's alleged alcoholism, at a minimum, defendants cannot seriously argue that Golten was provided notice and an opportunity to be heard regarding the issue of alcoholism.

the instant case there was no formal hearing convened, nor did the board present any witnesses. Unlike <u>Clark</u>, there was no opportunity to cross-examine the authors of the report or the directors, nor was there an opportunity for the Golten to question any members of the board.  <u>See</u> <u>Clark</u>, 118 A.D.2d at 833  Thus, any comparison to <u>Grace</u> and <u>Clark</u> is improper.

Further, neither <u>Grace</u> nor <u>Clark</u> stands for the proposition that the requirement that a board must act in good faith is waived if the board member was provided notice and an opportunity to be heard.  Indeed, the challenge in <u>Grace</u> was to the procedures employed by the board when they removed him from the board and did not focus on the issue of bad faith.  <u>See</u> <u>Grace</u> 118 A.D.2d at 313.   In the absence of any case law to the contrary, this Court must apply the reasoning of the Second Circuit.  To hold otherwise is contrary to law and would eviscerate the good faith requirement that is embedded in New York law.  Under defendants' position, a board member could breach his/her fiduciary duty or act in bad faith, so long as they provided the aggrieved party notice and an opportunity to be heard before taking the illegal act.  This is simply illogical.

The fallacy of this argument is contained in defendants' submission to this Court.  The only other case that defendants cite to support their claim that notice and an opportunity to be heard insulates a board's decision from review, <u>Davidson v. James</u>, 172 A.D.2d 323 (1st Dep't 1991), directly contradicts this claim.  The court made clear in <u>Davidson</u> that deference to the board of directors is permitted only "when there is no indication that the petitioner's removal was <u>tainted by fraud or other wrongdoing</u>."  <u>Davidson</u>, 172 A.D.2d at 324 (emphasis added). Defendants argue in their papers that "[i]f the procedures are followed, there is nothing more for the court to analyze, unless there is real evidence of bad faith."  Yet, defendants assert that

Golten is not entitled to discovery to obtain this evidence.[10]  This is counter intuitive, as the very essence of discovery is to permit the party who has the burden of proof, an opportunity to obtain the evidence to support its claim.[11]  Cf.  Hickman v. Taylor, 329 U.S. 495, 507 (1947) (holding ". . . that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.")  Accordingly,  Golten is entitled to discovery into bad faith.

## C. Golten is Entitled To Question the Board Members Regarding Their Decision and Whether They Blindly Relied on the May 18, 2007 Report

Lastly, defendants suggest that defendants' reliance upon the Report prepared by counsel precludes discovery into whether they relied on it in good faith.  See Defendants' Memo at pp. 9-10.  In fact, this argument was specifically rejected by the Secord Circuit in Hanson Trust PLC v. ML SCM Acquisition, 781 F.2d 264, 274 (2d Cir. 1986).  In Hanson Trust, the Court was called upon to review a decision of the board of directors regarding the sale of the company.  The plaintiffs in Hanson Trust, who were shareholders in the company, brought suit to enjoin the sale.

In determining that the price offered was fair, the board in Hanson Trust relied upon a report prepared by counsel.  In response to a challenge by shareholders to the sale, the board

---

[10] In fact, Golten has received limited evidence supporting defendants' bad faith in discovery already.  In response to Golten demonstrating in his preliminary injunction motion that defendants' allegation that he was the unidentified shareholder who supposedly contacted PON in 2006 about selling the company was not supported by any evidence, defendants argued that Golten's alleged failure to deny that he was the one was "strong evidence" that he was the unidentified Golten shareholder.  See Docket # 39 at 14-15.  In reply, Golten demonstrated that in fact he had denied the accusation in a memorandum that was faxed to his sisters and Rutkowski, all of whom are directors, that was produced by the defendants in discovery.  See Docket # 41, at 5; Docket # 42 at Ex. B.

[11] As aptly noted by Magistrate Judge Pitman ". . . the notion that you have to establish the merits of your claim to take discovery as I understand it is antithetical to the Federal Rules of Civil procedure because it's circular."  See Exhibit D at 14.

argued, as the defendants do in the instant case, that their reliance upon the report insulates their decision from judicial review.  This claim was rejected by the Second Circuit which made clear that "[i]n general directors have some oversight obligations to become reasonably familiar with an opinion, report, or other source of advice before becoming entitled to rely on it." See Hanson Trust,781 F.2d at 275-76.  Upon review of the record, which was developed during an eight day evidentiary hearing on plaintiffs' motion for a preliminary injunction, the Second Circuit concluded that the directors did not adequately scrutinize the report and were not entitled to the protections of the business judgment rule.  Indeed the Court noted "while directors are protected to the extent that their actions evidence their business *judgment*, such protection assumes that the courts must not reflexively decline to consider the content of their 'judgment' and the extent of the information on which it is based." (emphasis in original)

Likewise, the New York Court of Appeals has held that the business judgment rule does not preclude inquiry into the investigation done by directors when exercising their business judgment. See Auerbach v. Bennett, 47 N.Y.2d 619, 634.  The Court of Appeals has held that "[p]roof . . . that the investigation has been so restricted in scope, so shallow in execution, or otherwise so Pro forma or halfhearted as to constitute a pretext or sham, consistent with the principles underlying the application of the business judgment doctrine, would raise questions of good faith or conceivably fraud which would never be shielded by that doctrine." Id.

The directors, in the instant case, had an obligation to read the report and become familiar with it, and if necessary, ask appropriate questions of the individuals who prepared the report. Failure to perform these tasks is evidence of bad faith. Id. Thus,  Golten has the right to inquire of the directors about the report and whether they carefully reviewed it and the alleged evidence attached to the report.   Golten is also entitled any other discovery to establish that the report was

22

pretextual or that the procedures were pro forma or that the board knew or should have known the report was false.  See Hanson Trust, 781 F.2d at 275.

### D.   Golten Has Sufficiently Pleaded Bad Faith

Defendants claim that even under the standard advanced in Stern, Golten failed to sufficiently plead bad faith.  Specifically, defendants cite to allegations in the amended complaint in Stern that purportedly contain more details that the instant amended complaint.  See Def. Mem. at 12-13.  For example, defendants note that the Amended Complaint in Stern states that defendants spent lavish funds on entertainment for politicians and that false statements were made by the Chairmen and Chief Executive Officer.  Defendants would have this Court believe that them Amended Complaint made token reference to bad faith.  Id.  This is yet another misstatement of the record.

The Amended Complaint is replete with allegations that defendants acted in bad faith, such that defendants are on notice of the allegations.  Paragraph "43" of the Amended Complaint Golten alleges that defendants "determined to oust [ Golten] from the boards of both companies to preclude him from obtaining information regarding the distributions and otherwise having a voice in the affairs of the Goltens Companies, and from obtaining the distributions to which he was otherwise entitled."  Paragraph "47" of the Amended Complaint alleges that "it was a forgone conclusion that defendants would remove [ Golten] from the boards of both companies without cause . . . . Thus, in fact it was clear to Orans Elsen that all the defendants wanted [Golten] off the boards of both companies and that the so-called memorandum would be biased against [ Golten.]"  Paragraph "53" of the Amended Complaint alleges that "In short, all of the alleged grounds for cause set forth in the Report are based upon misstatements of fact, surmise and conjecture."   Paragraph "56" of the Amended Complaint alleges that the defendants were

"motivated by self interest to commission the report because there was no evidence of any cause for removal."   Paragraph "57" of the Amended Complaint alleges that "The [defendants] had reason to believe that the Report contained serious errors and omitted documents in either their possession and control, or the possession and control of the Companies." These are a few of the many allegations contained in the Amended Complaint that specifically allege that defendants acted in bad faith.  See Arons. Aff. Ex. 4 at ¶¶ 43, 45, 47, 51-53, 56-59, 67, 70-71, 97, 98.  Thus, any claim that  Golten did not sufficiently plead bad faith is specious and must be rejected.

## POINT III

### DEFENDANTS ARE LIMITED TO THE MAY 18TH REPORT AND CANNOT SEEK DISCOVERY TO ALLEGEDLY SUPPORT THE REPORT

In the alternative defendants argue that if  Golten is permitted to obtain discovery regarding bad faith then defendants should be entitled to discovery to support their decision.  The purpose of this discovery, according to defendants, is to "determine the truth of whether there actually is cause to remove [ Golten] . . . ."  See Def. Mem. at 14.  It is well settled that a director can only be removed for cause based upon "proven charges."  See Auer, 306 N.Y. at 433.  The time for defendants to have discovered the truth and "prove[]" the "charges" was prior to removing Golten from the board.  Moreover, defendants conceded at the October 26, 2007 hearing before Magistrate Judge Pitman that the issue of whether there was cause to remove Golten is reviewed by the Court based upon the information in front of the board at the time of the removal.  See Ex. A at 3.   Thus, any after acquired information that was not before the board cannot be used by the defendants in this litigation as proof that they exercised their business judgment in good faith, and is thus irrelevant.

24

## CONCLUSION

For the foregoing reasons, Golten respectfully requests that the Court deny defendants motion to rescind Magistrate Judge Pitman's October 29, 2007, together with such other and further relief as this Court may deem just and proper.


Dated: New York, New York
       November 28, 2007

STORCH AMINI & MUNVES PC


By: _____/s/_____
      Lita Beth Wright (LBW 0442)
      Jonathan Bardavid (JB 0072)
Two Grand Central Tower, 25th Floor
140 East 45th Street
New York, NY 10017
(212) 490-4100
*Attorneys for Plaintiff*

25